BEERS *et al. v.* WABASH, ST. L. & P. RY. CO. (CHICAGO, B. & Q. RY. CO., Intervenor.)

*(Circuit Court, N. D. Illinois.* March 14, 1888.)

1. CARRIERS — COMMON CARRIERS OF GOODS — RECEIVERS — DUTIES — BOYCOTTS AND STRIKES.

The petition of the Chicago, Burlington & Quincy Railway Company, intervenor in the *Wabash Case,* represented that the receiver appointed by the court had issued an order in violation of his duties as a common carrier, and of a custom prevailing between the two roads, instructing his agents and subordinates to receive no more through freight cars of the petitioner, and that, in pursuance of such order, freight of that character offered by the petitioner had been refused, although the proper and usual tender of expense bills had been made with the offer. It also alleged that the Brotherhood of Locomotive Engineers had commanded a strike on petitioner's road, and, in order to boycott it, had issued instructions to its members on the Wabash and other connecting systems not to handle any of petitioner's freight. The prayer was for a peremptory order on the receiver to compel him to take such freight, for an injunction on the Brotherhood to prevent it from interfering with the Wabash engineers, and for a rule on the officers of the Brotherhood to show cause why they should not be punished for contempt. The answer of the receiver admitted the issuance of the order complained of, but set out that it was intended to be temporary only, and was, as a matter of fact, rescinded two days after the petition was filed, and another order made establishing intercourse on the old basis, and that this order was meant to be permanent. It was denied that the receiver or any of his engineers had been interfered with in any manner by the Brotherhood, or that the first order was promulgated under moral duress of that association. *Held,* that the objectionable order having been permanently rescinded, and no interference by the Brotherhood having been proven, neither the peremptory order, nor the injunction, nor the rule asked for should issue, but that the petition should remain on file for further action should any occasion therefor arise.

2. SAME.

The fact that a railroad is in the custody of the court does not render the receiver appointed by the court any the less a common carrier, and he cannot, as such carrier, refuse to receive from and deliver to a connecting road loaded or empty freight cars of that company because, by doing so, his own road may become involved in a strike of locomotive engineers, whose associates have "gone out" on such connecting road, and who are attempting to boycott it.

3. SAME — EMPLOYES OF RECEIVER — RIGHTS AND LIABILITIES.

While the locomotive engineers of a railroad in the hands of a receiver cannot be compelled by the court having the road in custody to remain in the service of the receiver, neither they, nor the "Brotherhood" to which they belong, will be permitted to interfere with or disturb the receiver or his subordinates in the possession and operation of the property.

In Equity. *In re* petition of the Chicago, Burlington & Quincy Railroad Company.

*Wirt Dexter* and *Henry Crawford*, for intervenor.

*Isham, Lincoln & Beale*, and *George W. Smith*, for receiver.

Gresham, J. The Chicago, Burlington & Quincy Railroad Company, with leave of the court, filed its petition in this suit, charging that until a recent date the receiver of the Wabash property freely interchanged cars with the petitioner, and all other companies having lines of road entering the city of Chicago; that on the 6th of March the petitioner tendered to the receiver's usual agent, at the usual place of delivery at Chicago, eight cars loaded with grain, the same being destined for delivery at points on, or to be shipped over the lines in the receiver's custody; that some of these cars belonged to the petitioner, some to other companies, and one to the receiver, and all were loaded for continuous passage, either at points in Illinois, and destined to points outside of that state, or loaded at points outside of the state of Illinois, and destined for continuous passage to points within the state, the proper expense bills being tendered to the receiver's agent, who, acting under express orders of the receiver, refused to receive, transport, or deliver such cars, or any others; that this action of the receiver's agent was in obedience to instructions from the receiver directing his agents and employes to receive no loaded cars from, and to deliver no loaded cars to, the petitioner, and to cease all traffic relations with it; and that the receiver's agents at other points of junction of the railways under his charge and those of petitioner, when applied to, informed the agents of the petitioner that they were under specific orders to neither deliver to nor receive from the petitioner cars loaded with freight. The petition further charges that the receiver's agents and employes gave as the sole reason for refusing to so interchange freight that the receiver's switching and other engineers had notified him that they would handle no freight cars coming from or going to the lines of the petitioner; that such engineers belonged to the Brotherhood of Locomotive Engineers, whose grand chief engineer, or Committee of Grievance, had notified all engineers belonging to such Brotherhood to refuse to handle cars coming from or going to the petitioner, and that in compliance with this action of such engineers the receiver had issued the instructions already named; that the Brotherhood of Locomotive Engineers have secretly resolved that a boycott shall be put into effective force against the petitioner over all its system, and all intercourse or exchange of cars between it and other connecting railroads, including the lines in the custody of this court; that P. M. Arthur, as the chief executive officer of the Brotherhood, has been in Chicago for 10 days, giving aid and direction to the members of the Brotherhood; and for the purpose of injuring the petitioner's business, and rendering it impossible for it to discharge its duties as a carrier, he has issued instructions to the members of the Brotherhood employed by the receiver not to allow their engines to be used in hauling cars going to or coming from the petitioner's line of railroad; and that the action of the receiver and his subordinates, in

refusing to exchange loaded freight cars with the petitioner, was the result of moral duress thus created by the Brotherhood, including the engineers in the receiver's service. The prayer of the petition is that a peremptory order be issued directing and requiring the receiver and his subordinates to interchange business with the petitioner according to usage; and to abstain from the declared policy of non-intercourse with the petitioner; also that the Brotherhood of Locomotive Engineers, its officers, agents, and committees, be enjoined from issuing any orders or instructions to any of the engineers in the service of the receiver as to what cars they shall haul over the Wabash tracks, and that such association and its officers, and especially P. M. Arthur, be required to show cause why they should not be punished for contempt in interfering with the property in the custody of the court.

The receiver's answer admits the existence of the usage of interchanging loaded cars between himself and the petitioner, but avers that such interchange has been small; the receiver's receipts therefrom during the month of January being less than $500. The answer avers that the petitioner owns and operates a system of railways occupying much of the territory tributary to the lines of the Wabash Company, and that the two systems are directly competitive at many important points. The answer admits that the receiver's agents declined to receive and haul the eight cars tendered as stated in the petition; but avers that at the time of such tender and refusal the receiver had issued no orders, and given no instructions whatever to his agents or employes, with respect to the interchange of business with the petitioner; but admits that on the day following such tender and refusal the receiver issued instructions to his agents to receive no cars of the petitioner for the present, but to transfer from the cars of the petitioner all freight tendered to the Wabash, and to take no freight originating on the petitioner's system, except as local freight. These instructions were issued. the answer avers, because there was danger that a continuance of interchange of business would cause the Wabash engineers to leave the receiver's employment, and thus inflict great injury upon the property in his custody; that the instructions were for only a temporary suspension of interchange of cars between the receiver and the petitioner, and that the receiver never announced any absolute and permanent policy of non-intercourse; that on the 10th of March (two days after the petition was filed) the receiver promulgated to the officers and employes in his charge the following order:

"All orders and directions heretofore given by me, or by any officer or agent of this road, which have been understood as limiting the interchange of cars or traffic with the Chicago, Burlington & Quincy Railroad, or any of the roads in that system, are hereby rescinded. The business of receiving and exchanging cars and traffic by this road with the C. B. & Q. Railroad Company, and all of the roads of that system, will go on upon the same terms and conditions as those upon which similar business is done by this road with other connecting railroads."

It is averred in the answer, and by the receiver and his counsel in open court, that this order will be enforced in the future. It is further

averred that the receiver consulted no one except his subordinates as to the propriety of issuing and enforcing the rescinded instructions; and that he has had no communication or conversation with P. M. Arthur, or any one representing him, respecting the operation of the Wabash Railway; and it is denied that the receiver has acted under moral duress exercised by P. M. Arthur, or anybody representing or connected with him, or that Arthur has ever in any manner obstructed the management or operation of the property in custody of the court. The answer concludes with the statement that the receiver believes this proceeding was originated, not so much from a desire to procure a resumption of the unimportant traffic of the petitioner with the respondent, as in the hope that the filing of the petition, and action thereon, would render the receiver incapable of managing the Wabash property, and that a large amount of the business now done by it would go to the petitioner as a competitor.

Although the property of the Wabash Company is in the custody of the court, it is operated by the receiver as a common carrier. His rights and duties are those of a carrier. He is bound to afford to all railroad companies whose lines connect with his equal facilities for the exchange of traffic. It is his duty to receive from and deliver to other connecting roads both loaded and empty cars. He cannot discriminate against one road by maintaining a policy of non-intercourse with it. More need not be said on this question, as the receiver has wisely rescinded the instructions which discriminated against the petitioner, and declares he has no purpose or desire to deny to the petitioner any of its legal rights. Although the petitioner has accomplished its chief purpose in invoking the aid of the court, it is urged by its counsel that persons belonging to the Brotherhood of Locomotive Engineers, and especially P. M. Arthur, who is the chief officer of that organization, have interfered with the receiver and his subordinates in the management of the Wabash property, and that they should be punished for their illegal and contumacious conduct. The receiver and his counsel make no such complaint. On the contrary, the receiver declares that there has been no such interference with him. While the affidavits submitted in support of the petition show that Mr. Arthur sent a telegraphic message to the engineers of the Union Pacific Railroad Company at Omaha, directing them to haul no cars of the petitioner, it does not fairly appear from the evidence that the engineers in the service of the receiver received such orders by telegraph or otherwise. For the present it is sufficient to say that the court will protect the property of the Wabash Company in its custody. The employes of the receiver cannot be obliged to remain in his service against their will, but neither they nor others will be permitted to interfere with or disturb the receiver or his subordinates in the possession and operation of the property in his custody. Lawless interference with the receiver and his employes in the discharge of their duty will not be tolerated. It is proper to state, however, in justice to the Wabash engineers, that they do not desire to maintain an attitude of defiance to the law, and that they are now willing to aid the receiver in the lawful and successful administra-

tion of his trust. The receiver's answer renders it unnecessary for the court to do more than direct that the petition remain on file for future action should there be occasion for it.